# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 97-3639 & 97-3640

_____

Michael Nichols,                    *
                                    *
        Petitioner-Appellant,       *
    v.                              *        Appeal   from   the   United States
                                    *        District  Court  for  the Western
Michael Bowersox,                   *        District of Missouri
                                    *
        Respondent-Appellee. *

_____

Richard L. Crane,                   *
                                    *
        Petitioner-Appellant,*
    v.                              *        Appeal  from  the  United States
                                    *        District  Court  for  the Western
Dave Dormire,                       *        District of Missouri
                                    *
        Respondent-Appellee. *

_____

Submitted: March 9, 1998

Filed:   April 3, 1998

_____

Before MCMILLIAN and FAGG, Circuit Judges, and BENNETT,[*] District Judge.
_____

BENNETT, District Judge.

Missouri state inmates Michael Nichols and Richard Crane challenge the dismissal of their petitions for writs of habeas corpus brought pursuant to 28 U.S.C. § 2254. The district court, believing it was constrained by this court's decision in *Allen v. Dowd*, 964 F.2d 745 (8th Cir.), *cert. denied*, 506 U.S. 902 (1992), dismissed the petitions as untimely under 28 U.S.C. § 2244(d)(1). On appeal, we consider whether the "prison mailbox rule"—deeming a *pro se* prisoner's notice of appeal "filed" at the time it is submitted to prison authorities for mailing to the district court—applies to the filing of a petition for writ of habeas corpus. We conclude that it does, and reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

On September 15, 1993, Michael Nichols was convicted in the Circuit Court of Jackson County, Missouri of one count of first degree murder, one count of first degree assault, and two counts of armed criminal action. He was sentenced to life in prison without the possibility of probation or parole as well as three lesser concurrent terms of imprisonment. On February 20, 1996, the Missouri Court of Appeals affirmed Nichols' conviction and sentence.

On December 3, 1992, Richard Crane was convicted in the Circuit Court of

---

[*] The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa, sitting by designation.

Jasper County, Missouri of one count of second degree burglary and one count of stealing. Crane was sentenced to concurrent prison terms of twenty years and one year respectively for these crimes. The Missouri Court of Appeals affirmed Crane's conviction and sentence on June 28, 1994.

After exhausting their state post-conviction remedies, Nichols and Crane, both proceeding *pro se*, prepared petitions for writs of habeas corpus, the "Great Writ"[1],

---

[1]Chief Justice Marshall was the first to refer to the writ of habeas corpus as "the great writ" in *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 96 (1807). By the time Chief Justice Marshall so described it, the writ of habeas corpus had already enjoyed several centuries of recognition, dating back at least to the English common law of the thirteenth century. *See, e.g.*, Charles D. Forsythe, *The Historical Origins of Broad Federal Habeas Review Reconsidered*, 70 NOTRE DAME L. REV. 1079, 1080 (1995) ("Unfortunately, the writ's arcane Latin phraseology obscures its historic purpose. A writ of habeas corpus is a civil procedure, directed to a law enforcement authority to contest 'the legality of the detention of one in the custody of another.' The writ is deeply based in the English common law, dating back at least to the thirteenth century.") (citations omitted); Emanuel Margolis, *Habeas Corpus: The No-Longer Great Writ*, 98 DICK. L. REV. 557, 563 (1994) ("The writ of habeas corpus is traceable to the common law, well before the founding of this nation."). Several types of habeas corpus writs had developed at least by the end of the reign of Edward I in 1307, but an early reference to such a writ can be traced back to Henry II's Assize of Clarendon in 1166, which "'made great changes in the administration of the criminal law' and, in part, ordered sheriffs to bring certain prisoners before the justices." *Id.* at 1090 (citing 1 SIR FREDERICK POLLOCK & FREDERICK MAITLAND, THE HISTORY OF ENGLISH LAW 137 (2d ed. 1968). Although the writ of habeas corpus has a long history in the common law, and, in this country, the common law has been used to determine its scope, it was not until 1867 that Congress extended federal habeas jurisdiction to state prisoners by statutory enactment. *Id.* at 1087-88; Margolis, *The No-Longer Great Writ*, 98 DICK. L. REV. at 564. Although the American history of the Great Writ has been rich, the grant of a writ of habeas corpus to a state prisoner is extraordinarily rare, as it should be if our dual system of state and federal courts is to function with proper respect for the state criminal adjudications. Nonetheless, part of the respect due our criminal justice system cannot help but be the result of the power of courts to continue constitutional review of convictions, even after direct appeals have run their course.

(continued...)

pursuant to 28 U.S.C. § 2254. Nichols and Crane signed their petitions on April 20 and April 21, 1997, respectively. Although the record is silent regarding the date the petitions were actually mailed, uncontradicted evidence in the record reflects that Nichols and Crane submitted their petitions to their respective prison mail systems on the date that the petitions were signed. The clerk of the district court received and filed Nichols' petition on April 28, 1997. Crane's petition was received and filed by the clerk on April 29, 1997.

The respondents moved the district court to dismiss both petitions on the ground that they were untimely filed. Specifically, the respondents argued that pursuant to 28 U.S.C. § 2244(d)(1), Nichols and Crane were required to file their habeas petitions on or before April 23, 1997.[2]

---

[1](...continued)
*See, e.g.*, 1 WILLIAM BLACKSTONE, COMMENTARIES 130-31 (1765) ("Of great importance to the public is the preservation of this personal liberty: for if once it were left in the power of any . . . magistrate to imprison arbitrarily whomever he or his officers thought proper . . . there would soon be an end of all other rights and immunities.").

[2]Section 2244(d) provides, in pertinent part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . .
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In considering the motions to dismiss, the district court first observed that under the "prison mailbox rule" established in *Houston v. Lack*, 487 U.S. 266 (1988), a notice of appeal from the denial of federal habeas corpus relief was timely filed when a *pro se* inmate deposited the notice to prison officials for mailing prior to the expiration of the applicable filing deadline. The district court then considered this court's decision in *Allen v. Dowd*, 964 F.2d 745, 746 (8th Cir. 1992), and concluded that in that case this court "refused to extend the prison mailbox rule to the filing of habeas corpus petitions." (App. at 48). The district court noted that *Allen* was decided before the addition of the one year time limitation in 28 U.S.C. § 2244(d)(1), but nevertheless reluctantly concluded that it was constrained by *Allen* from extending the mailbox rule to *pro se* petitions for habeas corpus relief. The court found that Nichols' and Crane's petitions were filed after April 23, 1997, and accordingly, dismissed both petitions as untimely under § 2244(d)(1).

The district court granted Nichols and Crane certificates of appealability on the issue of "whether the prison mailbox rule announced in *Houston v. Lack*, 487 U.S. 266 (1988), should now apply to the filing of habeas corpus petitions."[3] Nichols and

---

[3] As an initial matter, the respondents assert that the district court improvidently granted the certificates of appealability because the dismissal for untimeliness did not implicate a matter of constitutional dimension. Accordingly, respondents argue, Nichols and Crane could not have "made a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2). On this basis, the respondents assert that this court lacks jurisdiction to consider the appeals. We hold this argument to be without merit.

At the outset, we note this court's earlier conclusion that a district court judge possesses the authority to issue certificates of appealability under § 2253(c) and FED. R. CIV. P. 22(b), *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997), so long as the judge finds a substantial showing of the denial of a federal constitutional right . *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir.), *cert. denied*, 513 U.S. 946 (1994).

(continued...)

Crane filed timely notices of appeal to this court, and the cases were consolidated for disposition.

## II. STANDARD OF REVIEW

Nichols and Crane contend that the dismissal of their petitions was erroneous on two alternative grounds. First, they contend that the prison mailbox rule announced in *Houston v. Lack* should be extended to a *pro se* inmate's filing of a federal habeas petition. Nichols and Crane assert that such an extension is warranted by the newly enacted one-year period of limitation for federal habeas petitions contained in 28 U.S.C. § 2244(d)(1). Alternatively, Nichols and Crane assert that

---

[3](...continued)

Here, the requisite "substantial showing" is clear. If, as Nichols and Crane contend, the prison mailbox rule extends to a *pro se* prisoner's filing of a petition for writ of habeas corpus, the district court's dismissal of the petitions on procedural grounds foreclosed their constitutional right to petition for the writs. *See* U.S. CONST., art. I, § 9, cl.2. Moreover, as this court stated in *Tiedeman*, if a certificate of appealability is regular on its face and not procedurally defective, the "appeal proceeds in this Court in the ordinary course. If we believed that the issues were without substance, we would simply summarily affirm the judgment, instead of taking the intermediate and wholly unnecessary step of vacating the certificate of appealability." *Tiedeman*, 122 F.3d at 522.

even if the prison mailbox rule does not apply, the doctrine of equitable tolling should stall the running of the one-year limitation period because "extraordinary circumstances" beyond their control prevented them from filing their habeas petitions.  We review the district court's dismissal of the petitions for habeas corpus relief *de novo*.  *United States v. Beck*, 122 F.3d 676, 677 (8th Cir. 1997); *Reese v. Delo*, 94 F.3d 1177, 1181 (8th Cir. 1996), *cert. denied sub nom.*, *Reese v. Bowersox*, 117 S. Ct. 2421 (1997); *United States v. Duke*, 50 F.3d 571, 576 (8th Cir.), *cert. denied*, 116 S. Ct. 224 (1995).

### III.  LEGAL ANALYSIS

Section 2244(d) went into effect on April 24, 1996, when the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 was signed into law.  This subsection amends 28 U.S.C. § 2244 by imposing a one-year time limitation following the conclusion of state court review for the filing of § 2254 habeas petitions.  The one-year limitation dramatically reduced a state inmate's window of opportunity to pursue habeas relief because prior to its enactment, habeas petitions could be filed many years after the conclusion of state post-conviction proceedings.[4]

---

[4]Of course this is not to say that the pursuit of habeas relief was utterly unrestrained.  Rule 9(a) of the *Rules Governing Section 2254 Cases* specifically addressed the issue of "delayed petitions":

> A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

RULES GOVERNING SECTION 2254 CASES, R. 9(a).

Nichols and Crane were convicted and sentenced prior to the enactment of the AEDPA, and the parties—as well as the district court—have assumed that pursuant to § 2244(d)(1), the deadline for these prisoners to file their petitions was April 23, 1997. At oral argument, the respondents challenged the district court's calculation of the filing deadline. This argument was not raised below, and we will not address it for the first time on appeal. *See Colonial Ins. Co. v. Spirco Envtl., Inc.*, ___ F.3d ___,___, 1998 WL 73076 *1 (8th Cir. Feb. 24, 1998); *United States Dep't of Labor v. Rapid Robert's Inc.*, 130 F.3d 345, 348 (8th Cir. 1997). As stated above, Nichols' petition was signed and submitted to the prison mail system on April 21, 1997, and filed by the clerk on April 28, 1997. Crane's petition was signed and submitted on April 20, 1997, and filed nine days later, on April 29. If, as Nichols and Crane contend, their petitions were "filed" for purposes of § 2244(d)(1) on the date they were deposited into the prison mail system, the petitions were timely filed.

### A. Origin Of The Prison Mailbox Rule

We begin our inquiry with the United States Supreme Court's decision in *Houston v. Lack*, 487 U.S. 266 (1988). In that case, the Supreme Court held that a *pro se* state inmate's notice of appeal from the dismissal of his habeas petition was filed at the moment he submitted the notice to prison officials for mailing. *Houston*, 487 U.S. at 277.[5] In adopting what has come to be known as the "prison mailbox

---

[5] Rule 4 of the *Federal Rules of Appellate Procedure* was amended to reflect the decision in *Houston v. Lack. See* FED. R. APP. P. 4(c).

rule," the *Houston* Court emphasized the peculiar obstacles facing *pro se* prisoner litigants:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. . . . Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay.

*Id.* at 270–72.

Mindful that many lower courts had rejected general application of the mailbox rule to determine when a notice of appeal was filed, the Court explained that policy concerns associated with *pro se* prisoner filings warranted application of the rule to the filing of these litigants' notices of appeal. The *pro se* prisoner's lack of control is of particular concern. As the Court emphasized, a *pro se* prisoner's diligence in depositing his notice of appeal to prison authorities in advance of the filing deadline provides no assurance that the document will ultimately be "filed" on time. *Id.* at

9

271. Moreover, as a result of confinement, the *pro se* inmate has virtually no means by which to track the whereabouts of his notice:

> Unskilled in law, unaided by counsel, and unable to leave the prison, [the prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Id.*

The Court went on to distinguish the *pro se* inmate from the average civil litigant who chooses to entrust the mail system to promptly deliver a notice of appeal:

> The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox--he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date.

*Id.* at 275. In this sense, the general concern that application of a mailbox rule would spawn disputes and uncertainty as to when a litigant mailed the notice is alleviated in the case of a *pro se* inmate because prison authorities—via the prison mail log—will have access to the pertinent information. *Id.* In this context, the prison mailbox rule is a "bright-line rule, not an uncertain one." *Id.*

### B. Application Of The Rule Since Houston

The respondents assert that the mailbox rule announced in *Houston* is inapplicable to the filing of petitions for habeas corpus relief because the Court only endorsed the rule's applicability to the filing of a notice of appeal. We understand

10

the gravamen of this argument to be that the prison mailbox rule should not be extended to other *pro se* filings. This argument is unavailing. As this court observed in *Miller v. Benson*, 51 F.3d 166, 169, n.2 (8th Cir. 1995), other circuits have extended the rule in *Houston* to *pro se* prisoner filings outside the habeas context. *Miller*, 51 F.3d at 169, n.2 (citing *United States v. Moore*, 24 F.3d 624 (4th Cir. 1994) (extending mailbox rule to notice of appeal from a criminal case); *Dory v. Ryan*, 999 F.2d 679 (2d Cir. 1993) (applying rule to § 1983 complaint); *Thompson v. Raspberry*, 993 F.2d 513, 515 (5th Cir. 1993) (per curiam) (extending rule to the filing of objections to magistrate judge's report and recommendation); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (applying rule to § 1983 complaints as well as complaints brought pursuant to the Federal Tort Claim Act); *Faile v. Upjohn Co.,* 988 F.2d 985, 988-89 (9th Cir. 1993) (applying rule to all pro se prisoner filings); *Simmons v. Ghent*, 970 F.2d 392, 393 (7th Cir. 1992) (extending rule to Rule 59(e) motions); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735-36 (4th Cir. 1991) (per curiam) (applying rule to civil complaints); *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989), *cert. denied*, 493 U.S. 1059 (1990) (applying rule to the filing of objections to magistrate judge's report and recommendation)); *see also*, *McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997) (applying rule to a motion for an extension of time to correct deficiencies concerning *in forma pauperis* status); *Smith v. Evans*, 853 F.2d 155 (3d Cir. 1988) (extending rule to the filing of a motion for reconsideration pursuant to FED. R. CIV. P. 59(e)).

Our circuit has also extended the prison mailbox rule to *pro se* filings outside the habeas context. In *Hamm v. Moore*, 984 F.2d 890, 892 (8th Cir. 1992), this court revisited the policies set forth in *Houston*, and concluded that the prison mailbox rule should be extended to a *pro se* filing of a notice of appeal in a § 1983 action. *Hamm*,

11

984 F.2d at 892. Three years later, this court again considered the propriety of extending the prison mailbox rule—this time in the context of a *pro se* prisoner's motion for reconsideration pursuant to FED. R. CIV. P. 59(e). *United States v. Duke*, 50 F.3d 571, 575 (8th Cir. 1995). In *Duke* this court stated:

> We believe that the rationale of *Houston* and the new Rule 4(c) applies with equal force to a motion which, under Rule 4(a)(4), tolls the time for the filing of a notice of appeal. . . Thus, we hold that Duke's motion for reconsideration should be deemed timely served if it was delivered to prison authorities for mailing within the ten-day time period of FED. R. CIV. P. 59(e) and FED. R. APP. P. 4(a)(4)(F).

*Id. Compare Burgs v. Johnson County, Iowa*, 79 F.3d 701, 702 (8th Cir. 1996) (concluding that Burgs was not entitled to the benefit of *Houston* because he was represented by counsel and thus in the same position as other litigants who rely on their attorneys to file a timely notice of appeal).

### C. Application Of The Rule To Habeas Petitions

The respondents contend that even if the prison mailbox rule is properly applied to certain *pro se* inmate filings, the rules governing habeas procedure prohibit its application to the filing of habeas petitions. In support of this contention, the respondents direct our attention to Rule 3 of the *Rules Governing Section 2254 Cases.* Rule 3(a) provides that a petition for writ of habeas corpus relief "shall be filed in the office of the clerk of the district court." RULES GOVERNING SECTION 2254 CASES, R.3(a). Rule 3(b) sets forth the duties of the clerk of court pertaining to habeas petitions, and provides, in pertinent part, as follows:

12

> **(b) Filing and service.** Upon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, and having ascertained that the petition appears on its face to comply with rules 2 and 3, the clerk of court shall file the petition. . . .

RULES GOVERNING SECTION 2254 CASES, R. 3(b). In the respondents' view, Rule 3 plainly defines the moment at which a habeas petition is filed and therefore, by implication, prohibits application of the prison mailbox rule.

While we agree that Rule 3(a) prescribes the procedures by which a habeas litigant is to file his or her petition, we reject the assertion that Rule 3 defines the moment when a habeas petition is "filed" for purposes of the one-year time limitation set forth in § 2244(d)(1). In our view such a reading begs the question presented to us today, and ignores the important policy concerns raised by the Court in *Houston*. Obviously, incarcerated *pro se* litigants are unable to journey to the district court clerk's office to file their habeas petitions. Instead, they must submit their petitions to prison authorities for forwarding to the clerk. We hold that there is no meaningful distinction between the situation of a *pro se* inmate seeking to file a notice of appeal from the dismissal of a habeas petition and that of a *pro se* inmate seeking to file a habeas petition in the first instance—both must rely upon the diligence of prison authorities to forward their documents for filing. The respondents assert that the *Rules Governing Section 2254 Cases* contemplate the situation of an incarcerated litigant and by omission, reject the necessity of the prison mailbox rule. Respondents' observation is only partially correct because although the *Rules Governing Section 2254 Cases* must, by their nature, contemplate the situation of an incarcerated litigant, they do not directly address the situation of an incarcerated *pro*

13

*se* litigant. It is this combination of obstacles that gave rise to the policy concerns expressed in *Houston* and that concern us today.

Respondents argue that even if the prison mailbox rule is applied to the petitioners' filings, their petitions were still untimely because they were not submitted with the proper *in forma pauperis* paperwork as required by Rule 3(b). We disagree. A standing order of the district court specifically grants incarcerated petitioners with provisional leave to proceed *in forma pauperis* at the time their petitions are received by the court clerk and we see no reason to deny Nichols and Crane the benefit of this local rule. As the district court observed, the petitions were considered filed on the date they were received by the clerk despite the absence of the *in forma pauperis* documents. If the prison mailbox rule applies, the petitions would have been sufficiently complete under the district court's standing order on the date they were submitted to prison authorities for mailing. Although the respondents' argument on this point is nebulous at best, to the extent they invite us to consider the propriety of the standing order, we decline the invitation. The respondents did not challenge the district court's standing order below, and we will not entertain such a challenge for the first time on appeal. *See Colonial Ins. Co.*, ___ F.3d at ___, 1998 WL 73076 at *1 (8th Cir. Feb. 24, 1998).

The respondents also emphasize that unlike FED. R. CIV. P. 4(c), Rule 3 has not been amended to incorporate the prison mailbox rule. One interpretation of this is, as respondents suggest, that the prison mailbox rule was not intended to apply to the filing of habeas petitions. An equally plausible interpretation is that no amendment to the *Rules Governing Section 2254 Cases* was necessary prior to the enactment of the AEDPA because no statutory time limitations were imposed upon the filing of habeas petitions. Nothing in *Houston* indicates that the prison mailbox rule is strictly

14

reserved for notices of appeal, and we decline to engage in inferential guesswork to reach such a conclusion.

Finally, respondents contend that in *Allen v. Dowd*, 964 F.2d 745 (8th Cir.), *cert. denied*, 506 U.S. 902 (1992), this court rejected application of the prison mailbox rule to the filing of habeas petitions. In *Allen*, this court considered the plight of a petitioner whose § 2254 habeas petition was dismissed on the ground that he did not satisfy the statute's "in custody" requirement. *Allen*, 964 F.2d at 745. The district court concluded that Allen's petition was not filed until eight days after he completed the challenged state prison sentence. Allen had completed his first sentence and was serving his second consecutive prison sentence. His first conviction and sentence were the subject of his habeas petition. Accordingly, Allen was no longer "in custody"—for purposes of the relevant conviction and sentence—on the date his petition was filed. On appeal, Allen argued that his earlier conviction affected the sentence he was presently serving to the extent that it delayed his release date. Relying upon the rule set forth in *Maleng v. Cook*, 490 U.S. 488 (1989) (per curiam), Allen asserted that he was entitled to challenge the sentence for which he was currently "in custody" on the ground that the allegedly invalid prior conviction, on which the sentence had expired, enhanced his current sentence. *Allen*, 964 F.2d at 746 (citing *Maleng*, 490 U.S. at 493-94).

This court rejected Allen's contention, finding that his reliance on *Maleng* was misplaced:

> [Allen's] argument overlooks the fact that nowhere in his petition does he challenge his later conviction. Allen expressly restricts himself to challenging the 1982 conviction for receiving stolen property. In *Taylor v. Armontrout*, 877 F.2d 726 (9th Cir. 1989) (per curiam), we

15

affirmed a dismissal where the petitioner had served the sentence challenged in his habeas petition and had failed to assert in his petition an attack against a current sentence, even though he argued on appeal that the earlier conviction resulted in an enhancement of his later sentence.

*Id.* Although Allen was not allowed to proceed under *Maleng*, this court observed that he was entitled to file a new petition properly attacking the conviction for which he was presently incarcerated. *Id.*

Allen also argued that he deposited his petition for mailing with prison authorities approximately five days before his release and therefore, under the rule espoused in *Houston*, the district court should have deemed his petition filed on the date of mailing. The *Allen* court rejected this argument stating:

> Allen's argument fails, for [*Houston*] is limited to notices of appeal which have a 30-day deadline under 28 U.S.C.A. § 2107(a) and FED. R. CIV. P. 4(a)(1). This case does not concern a notice of appeal *or other filing with a 30-day deadline*. Moreover, this court has recently held that filing does not occur in a habeas case until the petitioner has either paid the filing fee or been granted leave to proceed *in forma pauperis*. *Weaver v. Pung*, 925 F.2d 1097, 1099 (8th Cir.), *cert. denied*, 502 U.S. 828 (1991). Allen was not granted leave to proceed *in forma pauperis* until June 13, 1990. We thus hold that the district court did not err in holding that Allen was not "in custody" when his petition was filed.

*Id.* (emphasis added) (some internal citations omitted). Seizing upon this language, respondents assert that this court has already determined that the prison mailbox rule does not apply to petitions for habeas relief.

We are, of course, bound by Eighth Circuit precedent, and as this court has repeatedly observed, one panel may not overrule another panel's decision. *See, e.g.,*

*United States v. Reynolds*, 116 F.3d 328, 329 (8th Cir. 1997); *United States v. Prior*, 107 F.3d 654, 660 (8th Cir. 1997); *United States v. Dittrich*, 100 F.3d 84, 87 (8th Cir. 1996), *cert. denied*, 117 S. Ct. 1454 (1997); *Jenkins v. State of Missouri*, 73 F.3d 201, 205 (8th Cir. 1996). Only the court sitting *en banc* may effectuate such a change. *United States v. Bass*, 121 F.3d 1218, 1222 (8th Cir. 1997); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996). However, we are equally mindful that we are not bound by another panel's *dicta*.[6] *Wilson v. Zoellner*, 114 F.3d 713, 721 n.4 (8th Cir. 1997); *see also*, *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992) (per curiam) (noting that statement in prior case "was not necessary to decide the issue in the case and is not binding authority [here]"), *cert. denied sub nom. Boyer v. DeClue*, 508 U.S. 974 (1993); *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 550 (8th Cir. 1990) (observing that panel need not follow prior panel's *dicta*), *cert. denied*, 500 U.S. 905 (1991).

We have scrutinized the holding in *Allen*, and conclude that although it may be a close question, the *Allen* court's observations regarding the inapplicability of the prison mailbox rule are *dicta* because they were "not necessary to decide the issue in the case." *See Boyer*, 971 F.2d at 102. The holding in *Allen* was premised on the fact that Allen's habeas petition failed to make any reference to the conviction for which

---

[6] *Dicta* is a common abbreviation for *obiter dicta*, and is defined as "words of an opinion that are entirely unnecessary for the decision of the case." BLACK'S LAW DICTIONARY 1072 (6th ed. 1990). Examples of dicta include a "remark made, or opinion expressed, by a judge, in his decision upon a cause, 'by the way,' that is, incidentally or collaterally, and not directly upon the question before him, or upon a point not necessarily involved in the determination of the cause, or introduced by way of illustration, or analogy or argument." *Id.*, *see also King v. Erickson*, 89 F.3d 1575, 1582 (Fed. Cir. 1996), *rev'd on other grounds sub nom. LaChance v. Erickson*, 118 S. Ct. 753 (quoting same).

he was presently incarcerated. For this reason, Allen was not "in custody" for purposes of challenging the prior conviction or its effect on his present sentence. Even if Allen's petition had been deemed "filed" on the date he submitted it to prison authorities for mailing, Allen would have failed, as a practical matter, to meet the "in custody" requirement for the challenged conviction and sentence because that sentence expired five days after he mailed the petition. Without referencing his second sentence, Allen confined himself to challenging a sentence that was completed before any habeas relief could be granted. *See Allen*, 964 F.2d at 746. Consequently, we are not bound by the panel decision in *Allen*.[7] *See Wislon*, 114 F.3d at 721 n.4; *Boyer*, 971 F.2d at 102.

Although we have concluded that *Allen's* reference to the prison mailbox rule was not essential to the holding in that case, we note that *Allen* was decided well before the enactment of the filing deadline now imposed on habeas petitions. This is particularly significant because at the time *Allen* was decided, *pro se* prisoners were not in jeopardy of being foreclosed from pursuing habeas relief if their petitions were not received by a certain date. Put simply, application of the prison mailbox rule was simply unnecessary. The advent of section 2244(d)(1) dramatically changed this. Under the present statutory landscape, *pro se* prisoners must heavily rely upon

---

[7]We are puzzled by the dissent's assertion that we have engaged in "lip service" and "transparent rule-making," have "by-passed circuit precedent, the *en banc* court, and Congress," and have made an "end run around *Allen*." To the contrary, we acknowledge that if the targeted passage in *Allen* is not *obiter dictum*, only the court sitting *en banc* has the power to overturn *Allen* and arrive at the conclusion we reach today. Furthermore, while the dissent never addresses the threshold issue of whether the targeted passage in *Allen* is or is not *dictum*, we have explained our reasons for concluding that *Allen's* observations regarding the prison mailbox rule were merely incidental to its holding, and therefore not binding upon this panel.

18

the diligence of prison authorities to mail their habeas petitions in a timely fashion.

We are persuaded that the important concerns expressed by the Supreme Court in *Houston* apply with equal force to a *pro se* prisoner's filing of a petition for writ of habeas corpus.  As the Fourth Circuit Court of Appeals stated in *Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir. 1991):

> Fundamentally, the rule in *Houston* is a rule of equal treatment; it seeks to ensure that imprisoned litigants are not disadvantaged by delays which other litigants might readily overcome.  It sets forth a bright line rule—that filing occurs when the petitioner delivers his pleading to prison authorities for forwarding to the court clerk.

*Lewis*, 947 F.2d at 735 (extending prison mailbox rule to a § 1983 complaint).  In our view, the proper focus is upon the *pro se* inmate's lack of control over his petition once he has deposited it with prison authorities for mailing to the clerk of court. In the context of a habeas petition controlled by the time restraints contained in 28 U.S.C. § 2244(d)(1), the *pro se* inmate's lack of control is particularly compelling because as with a notice of appeal, if the inmate's documents are not timely filed, the inmate is foreclosed from pursuing further relief.  As explained above, this conclusion is not contrary to this court's ruling in *Allen v. Dowd* because at the time that case was considered, habeas petitioners were constrained only by the prejudicial concerns addressed in Rule 9(a) of the Rules Governing Section 2254 Cases. *See also Miller v. Benson*, 51 F.3d 166, 169 n.2 (8th Cir. 1995) (referencing the policy arguments set forth in *Houston* and noting "[a] good argument can be made for extending the rule in *Houston v. Lack* to filings other than notices of appeal.").

We observe that at least one of our sister circuits has expressly extended the prison mailbox rule to the filing of habeas petitions. *Burns v. Morton*, 134 F.3d 109,

113 (3d Cir. 1998).[8] In that case, the petitioner (Burns) submitted his petition for a writ of habeas corpus under 28 U.S.C. § 2254 to prison authorities one day before the expiration of the filing deadline. *Id.* at 110. The clerk of court did not receive Burn's petition until five days after the deadline. *Id.* The district court declined to apply the prison mailbox rule, and subsequently dismissed the petition as untimely.

The Court of Appeals for the Third Circuit reversed, holding that a *pro se* inmate's habeas petition is deemed filed at the moment the inmate submits it to prison authorities for mailing to the district court. *Id.* at 113. In reaching this conclusion, the *Burns* court emphasized the obstacles—particularly the lack of control—confronting *pro se* inmates:

> Many have expressed their concern with the *pro se* prisoner's lack of control over the filing of documents, especially as compared to the control other litigants maintain, e.g. *Faile [v. UpJohn Co.*, 988 F.2d 985, 988 (9th Cir. 1993)]. We share their concern . . . [The Supreme Court's holding in *Houston*] was founded on such concerns, and are present with equal force where a *pro se* prisoner places his habeas petition in the hands of prison authorities for mailing. Once he has done so, he is completely unable to ensure that the district court will receive his petition promptly; he remains entirely at the mercy of prison officials.

*Id.*

Two other cases, also cited in *Burns*, warrant mentioning. Although the Sixth Circuit Court of Appeals has yet to address the precise issue raised here, it has

---

[8]The respondents cited the district court opinion, *Burns v. Morton*, 970 F. Supp. 373 (D.N.J. 1997), in support of their contention that the prison mailbox rule is inapplicable to habeas petitions. We note that the district court's decision was reversed after the submission of briefs in this consolidated appeal.

applied the prison mailbox rule to a motion made pursuant to § 2244(b)(3) for authorization to file a second or successive motion under 28 U.S.C. § 2255. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997) (stating that "for purposes of the one-year limitations periods established by § 2244(d) and § 2255, on the date that the § 2244(b)(3) motion is given to prison authorities for mailing and the prisoner has satisfied the verification requirements of FED. R. APP. P. 25(a)(2)(C)."); *accord United States v. Dorsey*, ___F. Supp.___,___, 1998 WL 5947, *3-4 (D. Md. Jan. 6, 1998) (applying prison mailbox rule to § 2255 motion). Similarly, in *Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir. 1997), the court appeared by implication to presume that the timeliness of a *pro se* prisoner's filing would be determined from the date the prisoner submitted the document to prison authorities for mailing. *See Peterson*, 107 F.3d at 93.

Aside from *Burns v. Morton*, 970 F. Supp. 373 (D.N.J. 1997), which has subsequently been reversed, the court has located no published decisions rejecting application of the prison mailbox rule to the filing of a habeas petition. In *United States ex rel. Barnes v. Gilmore*, ___ F. Supp. ___, ___, 1997 WL 797751 (N.D. Ill. Dec. 29, 1997), the district court, in an order written by Judge Shadur, considered the applicability of the prison mailbox rule to a § 2254 petition and concluded that the rule should be applied to habeas cases in the district court as well as in the court of appeals. Judge Shadur discussed at length the unreported decision in *United States ex rel. Banks v. Barnett*, 1997 WL 786666 (N.D. Ill. Dec. 15, 1997), and concluded that the *Barnett* court's refusal to apply the prison mailbox rule to § 2254 petitions was a result of that court's failure to "follow *Houston* to its logical end." *Gilmore*, ___ F. Supp. at ___, 1997 WL 797751 *4 (N.D. Ill. Dec. 29, 1997). Judge Shadur observed, *inter alia*, that § 2244(d)(1)'s one-year filing deadline presented no

21

obstacle to the application of the prison mailbox rule:

> The principal contention [for not applying the prison mailbox rule to § 2254 petitions because the filing deadline is one year as opposed to 30 days] that a prisoner assertedly doesn't have much need for the benefit of the mailbox rule . . . ignores the basic nature of every statute of limitations as a bright-line rule on which a litigant is entitled to rely: Nothing requires an Illinois personal injury plaintiff (for example) to enter the courthouse before the second anniversary of the tortious event that harmed him or her, although even one day beyond that is as fatal on limitations grounds as a ten-year delay in bringing suit.

*Id.* Emphasizing the policy concerns relevant to a *pro se* prisoner's situation, the *Gilmore* court concluded that the prison mailbox rule was equally applicable to petitions for habeas relief. *Id.; accord Parker v. Bowersox*, 975 F. Supp. 1251, 1253 (W.D. Mo. 1997) (applying prison mailbox rule to petition for habeas relief); *Hughes v. Irwin*, 967 F. Supp. 775, 778 (E.D.N.Y. 1997) (observing that *pro se* inmate's habeas petition was deemed filed when he delivered it to prison officials).

## *IV. CONCLUSION*

We are persuaded that the one-year filing deadline contained in 28 U.S.C. § 2244(d)(1) has brought the concerns expressed in *Houston* to bear upon a *pro se* inmate attempting to file a petition for habeas corpus relief. We therefore hold that a *pro se* prisoner's petition for writ of habeas corpus is deemed filed at the moment the prisoner submits it to prison authorities for mailing to the clerk of court. There is uncontradicted evidence in the record that the petitioners submitted their habeas petitions to prison authorities days before the April 23, 1997 filing deadline.

Accordingly, we hold that the petitions were timely filed.[9]  The decision of the district court is reversed, and the causes are remanded for further proceedings consistent with this opinion.

FAGG, Circuit Judge, dissenting.

After my colleagues give lip service to our well-established rule "that one panel may not overrule another panel's decision," they overrule the panel's decision in Allen v. Dowd, 964 F.2d 745 (8th Cir. 1992), by extending the prison mailbox rule announced in Houston v. Lack, 487 U.S. 266, 276 (1988), to habeas petitions filed by pro se prison inmates.  Contrary to my colleagues view, until the Supreme Court or our en banc court holds otherwise, see Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 838 (8th Cir. 1997); Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996), Allen makes clear that in this circuit the prison mailbox rule "is limited to notices of appeal." Allen, 964 F.2d at 746.

Additionally, my colleagues' transparent rule-making end run around Allen is contrary to our decision in Weaver v. Pung, 925 F.2d 1097, 1099 (8th Cir. 1991), (unlike the prison mail room serving as the clerk of court for the filing of a notice of appeal, a filing does not occur in a habeas case until the clerk receives the petition and the filing fee or an order granting leave to proceed in forma pauperis).  I believe my colleagues have also trespassed on Congress's turf by effectively altering Rule 3(b) of the Rules Governing Section 2254 Cases in the United States District Courts which governs the filing of habeas corpus petitions.  See id.  Unlike Congress's amendment to Federal Rule of Appellate Procedure 4(c) to reflect the decision in Houston v. Lack,

---

[9]In light of our holding and conclusion that the petitions were timely filed, we need not address the issue of whether the doctrine of equitable tolling applies to the time limitation set forth in 28 U.S.C. § 2244(d)(1).  We express no opinion on this issue.

Congress has neither rewritten the filing requirements for habeas petitions nor incorporated the prison mailbox rule in Rule 3(b).

All in all, my colleagues have bypassed circuit precedent, the en banc court, and Congress. Without doubt, the courts of appeals' decisions around the country show that good arguments can be made "for extending the rule in Houston v. Lack to filings other than notices of appeal," see Miller v. Benson, 51 F.3d 166, 169 n.2 (8th Cir. 1995), but in this circuit, the extension of the prison mailbox rule to pro se habeas filings by state prisoners is within the domain of the en banc court, not this panel. I thus decline to join the panel's opinion. For my part, I would follow Allen, reject Nichols's and Crane's habeas petitions, and request en banc review.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

24